We'll call our third case this morning, 23-8001 Doe v. Board of Trustees of Sublette County School. Doe v. Board of Trustees of Sublette County School Ms. Richard, good morning. Good morning. You may proceed when you're ready. May it please the court, counsel, I would like to reserve seven minutes for my rebuttal, please. Sublette County School District Number Nine had a predator teacher, a wolf, in sheep's clothing in its district. And by hiring the wolf's father as the principal and building supervisor, they gave the wolf free reign over this minor student. This court's structure for evaluating motions for summary judgment must be honored. It's an important structure and important requirements that this court has announced, even as recently as November 7th in its decision in Gracie 4th v. Laramie County School District. And the district court did not honor that structure. And there are three, there are many other facts, but there are three exceptional facts that illustrate that the best. Well, let me ask you a preliminary question. You're representing all three plaintiff appellants? Yes, Your Honor. And J. Doe and M. Doe, are you representing them as if they have their own claim or they are standing in a representative capacity for Jane? Both, Your Honor. Both? Yes, Your Honor. Okay, she's 18 years, she's still over 18 years old, she's in her 20s, right? Now she is, Your Honor, yes. Why should there be any continuing representative capacity? Well, Your Honor, we, the... Is she an incompetent? No, Your Honor. Is there a conservatorship? No, we simply were doing that to illustrate to the district court how the family could not have known because the district didn't disclose to them. Not my question. I'm trying to determine what capacity J. Doe, J. M. Doe and M. Doe are in this lawsuit. And you tell me they're both as a representative of their daughter and in their own right, they have their own freestanding Title IX claim. Yes, Your Honor, that is correct. And a freestanding 1983 claim. Yes, Your Honor. And the three facts... Continue, I just wanted to make sure that was clear. Yes, and I would say, Your Honor, that we allege some of those things broadly, but the critical claim are their own claims. That's the most important claim because as you point out, as the age changes, the district court allowed us to proceed... She was 18, that I was 18 when this was initiated and didn't need anybody to represent her. That is true, Your Honor. And the district court recognized that and let us proceed with pseudonyms and didn't address those other issues. But I hear your point, Your Honor. Those three exceptional facts that the district court did not correctly analyze using this court's requirements, even as recent as the Gracie Fourth case, are first, that there was a report by a third-party teacher and both parents reported. Second, the school principal and the father of the perpetrator teacher himself sees the predator teacher alone in the locked school on a Saturday with a minor student and recognizes that it is improper and he recognizes it in a text message that he sends to his son who's in the locked school with the plaintiff and then he drives away. And the third fact that was exceptional that the district court did not consider appropriately is that there was a dangerous conflict of interest. The school principal is the predator's father and building supervisor. And I want to be clear that this dangerous conflict of interest does not just lead to inappropriate conduct, a catcall, or- They had a substitute, you know, they recognized it long before your case came along or even the facts underlying it. And they had a middle school principal, I think, who, recognizing the possible conflict, who was to be in charge, right? You're absolutely right, Judge Murphy, and that is their argument. But here's what's fascinating- Well, isn't that the fact? It is not the fact, in practice. And here's what I mean by that. Okay, wait a minute. So this is on summary judgment. Yes, sir. So there must be an affidavit or deposition that says that that was the role of this particular middle school principal, correct? Yes, sir. And, okay, so unless that's rebutted, that's the fact for this case. And what did you put into the record to say that's not the case? Here's how it's rebutted, Your Honor. Three things. First, Mr. Stan Dodds was also the principal, in addition to supposedly coming to Big Piney High School, of the elementary school in LaBarge. And we deposed him. I don't know if you know where LaBarge is. I do know, I'm from Wyoming. Very good, Your Honor. It's a heck of a trip. And he testified, Mr. Dodds himself, in his deposition, I couldn't go to Big Piney High School on a daily basis. And the other thing that's fantastic in the record is the principal, the father's own affidavit. He puts a label at the beginning and says, I wasn't the day-to-day building supervisor, but if you read his affidavit closely, his deposition, all the depositions, what he's doing in real time is supervising his son. When he goes to the school on that Saturday, sees him in the school with this young woman, and leaves, and texts him, which, by the way, he initially denies until we got the text message. So there are a plethora of record pieces of evidence that demonstrate that that was a supervisor in name only. And Mr. Dodds, in his deposition, acknowledges that there was no way he could have supervised that on a daily basis. And the real supervisor was his father. And that's what led to this dangerous conflict of interest, this culture of institutional complicity. And this dangerous conflict allowed three years of grooming and sexual harassment. Council, can I, may I interrupt you for a moment? Of course, sure. In great detail about the merits, and I have a threshold question about the statute of limitations. Yes, your honor. Do you agree that the relevant limitation periods for all your claims, your Title IX claims, and your 1983 claims is the same? I believe it is, your honor, yes. And what is that? It's four years, your honor. Okay, and how do you understand your case to be within that? We are well within it, your honor. And it's interesting, it's a fact issue, once again, that the district court didn't give any kind of inference in favor of the non-moving party. The case law that we have cited, as you know well, Snyder Hill, the Sixth Circuit decision, and our expert report, we even have an expert report on this. The expert helps us understand that because of the way grooming works, it is unsound, and I think that's a gracious term, to sort of take the view of the perpetrator about what the minor knows at what time. Our position is that when this minor student was with her family doctor on October 31st, 2019, that is when she began to learn that she had been groomed and abused. And if you count- How does that fit with our case of Varnell? Varnell says the statute starts running when the conduct stops. The conduct we're talking about, I think, was March of 2017. It seems, in that world, we start counting the four years? No, Your Honor. We start counting, according to Snyder Hill, October 31st of 2019. And, Your Honor, our perspective, and I think the Sixth- How do you distinguish Varnell? Well, the first problem with Varnell is that the court did not decide whether discovery, the discovery rule, should be part of the accrual analysis under the statute of limitations. There's nothing to discover, is there? She, the daughter, knew all the facts about the grooming facts as of March 2017. As to their impact, that's something else. She knew all the facts. Your Honor, Judge Murphy, I love what the court said in Snyder Hill, that even when a minor student has some distress and something feels uncomfortable, they have been so expertly groomed and nearly brainwashed that they may have discomfort, but that is light years from understanding that they have been groomed for three years. Didn't she describe her behavior as grooming and understood that she had been groomed and that she just didn't understand the extent of how evil what had happened was as of a few weeks or months before graduation? Well, I think she understood that something was uncomfortable, but that she didn't fully understand and couldn't have fully understood. Our expert says, and the Sixth Circuit says, the kind of grooming. This person was telling her, I'm your adopted dad. Your parents love you conditionally. He stripped her of the support of her religion, her family, her family home, and this is exactly, it took him three years to do this. It takes years to reconstruct that and have that minor start to understand that a person who's saying, I'm your teacher, I'm the principal's son, and I'm doing something wrong, it takes years. Just as it took years to build it, it takes years to unwind it. So how do we reconcile Varnell and the Sixth Circuit case you rely on? I think you mentioned it, but if you could clarify your position on that. The Varnell case, as I understand it, did not decide whether the discovery rule in analyzing accrual of statute of limitations should apply. And my suggestion would be, given what we now know about grooming and sexual harassment in a school, if it would be unsound to reward perpetrators for grooming, to say, hey, if you groom, you can cut some of these claims off. And this grooming that took place for three years and then led to sexual abuse, it continued. People don't just magically change roles on their birthday or when they graduate. She still was in the dependent, vulnerable role of a student all the way until she was having nightmares and horrible anxiety and stress and went to her family doctor who called the authorities. And as this court knows well, many courts begin to run the statute of limitations when law enforcement is called. And this wasn't, as I said, just inappropriate conduct. This was him giving her a massage in the school, him pressing his erection against her back. You started out in saying about the problems with the district court decision. And one of the things you said is that the district court did not consider or adequately consider or properly consider the observations of another teacher. Yes, Your Honor. Are you talking about teacher Hughes or teacher Hibbert? Hibbert. And with all due respect, Your Honor, Hibbert had the courage to break out of the dangerous conflict and enabling culture and report. And notice, he didn't report to the principal father. He reported to the superintendent. And Tracy Hughes' affidavit, McKelkey's affidavit, and Steve Lloyd's affidavit, according to our expert and logic, are case studies in failed policies. They let this grooming go on. They denied it. They didn't investigate it. They wouldn't treat their actual notice as a report. They later, and the discrepancies are amazing. And their enabling and this dangerous, toxic culture that was allowed to exist, it emboldened the teacher. It gave a heightened risk and made her more vulnerable once they had actual notice. And it led to him sexually touching her, sexually assaulting her in his home with the principal father standing outside of the teacher's home. Did you take the deposition, Mr. Hibbert? Yes, sir. Yes, Your Honor. Well, Hibbert himself testified that he'd never seen anything inappropriate occur between JD and Mr. McKelkey. So doesn't that take care of the Hibbert thing? And I'm quoting right out of the district court decision. Yes, Your Honor. Is that wrong? Did the court mistake the facts? No, you said it perfectly. Doesn't that take care of the proposition that another teacher was observant of a problem? It does not, Your Honor, with all due respect. And it's exactly what the district court got wrong. And this court did a masterful job. Why is that testimony that I just cited to you not take care of Mr. Hibbert as not being an observer of anything inappropriate? Mr. Hibbert reported that he had concerns about an inappropriate relationship. And this court, in the fourth opinion, graciously- Well, he said, well, he didn't say that. MD, the stepmother, said that, correct? The father and the mother said that, correct? Right. So she's reciting the hearsay statement of somebody else. If you go straight to the horse's mouth, Hibbert, he said they observed nothing inappropriate. And isn't that what we rely upon, not the hearsay statement of the stepmother? Your Honor, with all due respect, under this court's decision under fourth, we understand now about groomers. We don't have to- No, no, I'm talking about evidence. Evidence, Your Honor, which is substantial in the record. And the district court didn't give any inference. I'm talking about specifically this Hibbert and the stepmother's That they're spending too much time together. That's what- that's hearsay. That's what the stepmother said. Well, Your Honor- Hibbert himself said he saw nothing inappropriate. Well, Your Honor, your court is clear. This court is very clear. You don't have to have evidence of actual sexual conduct to make a valid report to constitute actual notice for purposes of Title IX and to stop the danger to a minor student. I understand your position. Thank you, Your Honor. Thank you. If it may please the court, counsel, I'm Tracy Copenhaver. I represent all the police in this case. I would like to start out just by correcting a couple of things that were in the appellant's brief that I didn't have a chance to reply to. First of all, there's a statement in there that the district did not provide training to its staff until after this incident. That's 100% false. This small rural school district employed a nationally known company to develop a platform and train their staff in sexual harassment and sexual discrimination. They were tested on it and mandated to take that on at least a biannual basis. And this started as early as 2012 before Jane Doe ever even entered high school. There is continual representation that the statute doesn't run that she shouldn't appreciate this because she was a minor. She turned age 18 in March of 2017 prior to her ever graduating from high school. This district had appropriate policies on sexual harassment investigation and dealing with sexual harassment. It had absolutely no practice custom that would suggest otherwise. The Does testified they were not aware of a policy that caused the problem. The Does testified they were not aware of a customer practice, nor could they because the training was effective. There was not a single prior claim against any staff member of this district that they had ever engaged in sexual harassment with a student. They had a sparkling record. There is no section 1983 claims. There's no evidence of intent to discriminate. There is no similarly situated individual that could ever be identified. The district court got it exactly correct on Title IX and Section 1983. Let me address the statute of limitations because it is a very clear bar to this case. This court got it absolutely correct in Varnell. Not only did it get it correct, but virtually every circuit court out there that had facts similar to Varnell agree with Varnell and even refer to Varnell as an appropriate decision. What is your understanding of what Varnell held? Happened in Varnell? What is the holding of Varnell? And I ask that question because your opposing counsel suggests that the issue that permits her interpretation of the statute of limitations argument on accrual wasn't decided there. So I'm curious to know how you read Varnell. I read Varnell to say that in a case where a student alleges harassment by a teacher and then does not come forward with a claim till after the statute of limitations has run, that there is no tolling of the statute of limitations. That it begins to run from the date of the last applicable touching for which the defendants or appellees could be held responsible. That the effective date is equated to the tort most analogous. And in that case, it was a battery. So the touching and the only thing she claims from a sexual point that occurred at school, she claims happened about two weeks prior to graduation. She claims the teacher hugged her and had an erection. All the other sexual stuff happened after graduation when she was an adult. What was the precise date in 2017 where there was that hugging incident? Graduation was May 26th. And she testified it was approximately two weeks prior to that. So it was outside the four-year statute of limitations. And what was the date in May 2021? May 26th, 2021, they filed their complaint. And you say the last touching was? Two weeks prior to graduation, which 17, so May 9th, somewhere in there. Snyder Hill, the statute didn't run for very long. I mean, it didn't expire. We're talking about a little over two weeks. Correct. For that one incident. She alleges a whole bunch of other stuff that's way beyond the statute. Anything in the record, anything that could be suggestive of grooming, it occurred after or about May 9, 2017. No. And that will be verified when we go through and call this record. All right. Was there, so that incident on May 9th was a eureka moment for the daughter? Absolutely. She testified she was so upset about this that she felt like a brick. She was shaking.  She drove home in silence. She clearly appreciated the wrongfulness of this at that time. Did the record indicate there was any other communication while she was a student at the school, that there was any other face-to-face encounters with the teacher? No. Well, let me put it to you this way. Jane Doe claims that while at school, the teacher referred to her as his adopted daughter. She claims he told her he loved her. She claims he hugged her on a repeated basis. She claims he kissed her on the forehead. She claims they engaged in social media communications. And she claims that she would regularly go to his class before or after school. Not one of those things was ever observed by any employee. I'm talking about the statute of notations issues. I'm talking about any contact while she is a student at this school on or after May 9. There's nothing in the record that suggests that ever happened. And certainly, well, there's nothing in the record that suggests it happened. But at some time, though, she resumed communication because they were talking on TikTok or something. You know, it's possible they were on TikTok or had social media. That's possible. It was certainly never brought to the attention of anybody at school. I just want to know, was any of that going on, on or after May 9? That they had some discussions or social media? There's nothing in the record that I recall. It's possible, but nothing that is sexual in nature. OK, did they have any face-to-face meeting on or after May 9, 2017? Not that is alleged in this lawsuit to have been sexual abuse. In the summary judgment record, there's nothing. Nothing alleged to have occurred at that time that would be sexual abuse. You said on May 9, there was this sudden awareness. She was just so upset, Jane Doe. And there will be nothing in the record that we can find that she got back in touch with the teacher before she graduated. Nothing of a sexual harassment nature. She was in his class. Yes, she saw him. OK, so there was some contact. You don't think it was of a sexual nature? Correct. All right, but we're talking about grooming here. And that can be kind of a hidden, not expressed thing. What type of encounters or communication was there between the teacher and Jane Doe on or after May 9, 2017, while she was still a student there? The record doesn't indicate there is any communication of any kind, although there had to have been because she was his teaching assistant and in his class. But there's no record of any claim of any sexual inappropriateness. OK, thank you. Why shouldn't we treat the doctor's appointment as the relevant benchmark here in this particular kind of case with these particular facts? Why wouldn't that be consistent with Barnell? Because this court very logically and reasonably articulated the basis for starting the statute of limitations, the date of the last touching. And clearly, the reason this court said for that was that if you don't, a person could say, jeez, I didn't realize this for 10 years and come back. They could say, I knew that, yeah, I knew it was wrong. It was shocking to me, but I just chose not to tell anybody and I waited two years, four years, five years. We lose control over the whole system if we do that. I mean, as late as it was now, we didn't have some of the information we wish we had. The other circuits that have dealt with post-acid- Are you saying that PTSD type cases are different because PTSD has you block out the whole event, not just the consequences? No, I'm saying she didn't block out the whole event. She was aware of it the whole time. She just didn't get counseling for it until two years later, which conveniently, because they missed the statute of limitations, it's what they now want to say, that was the moment it dawned on her. But all the other circuits that have looked at Varnell agreed with Varnell. The Snyder-Hill case isn't even remotely similar. It dealt with a case where Ohio State, for a decade, had received complaints about a teacher. They covered it up. They knew he had a propensity to victimize these other students. They actually destroyed records. Every case that's similar to Snyder-Hill dealt with pre-existing reports against this same individual that the institution was aware of and that the plaintiff couldn't have gained knowledge of until later. Totally different. This court may agree with Snyder-Hill if this were that case, but it's not. And there's a really good district court decision, VE versus, I think, University of Maryland, which clearly articulates the difference between a pre-assault case and a post-assault case and says Snyder-Hill was correct for a pre-assault case and says Varnell was correct for a post-assault case, which is what this is. Let me point out on the notice thing. With the father, so there was a rumor. No, there was an employee, a teacher, a parent. No one ever saw or heard anything inappropriate between these two individuals. There was a rumor reported that they were together, maybe behind a closed door, and that she was in a weight room, which there were a lot of weight room people, which was all thoroughly investigated by the superintendent. He concluded there was nothing sexual or inappropriate. The father called to report his disagreement with his daughter being transferred out of an advisory class. He did not call to report inappropriate conduct. He got in an argument with the principal, and last minute, at the end of the conversation, says, you know, sometime we're going to have a conversation about what's becoming an inappropriate relationship between my daughter and, or actually didn't see that, between a student and a teacher or teacher's family. Now, that inappropriate relationship was not sexual that he was talking about, because he testified neither he nor his wife had any idea or notion that there was anything sexually inappropriate. They couldn't have reported something sexual, because they didn't believe it. They didn't know there was anything. The principal didn't know anything. If they have a claim in their own right, as distinguished from a representative capacity, doesn't the statute of limitations then begin to run vis-a-vis them at that date, when they discovered? Of course. And truthfully, the statute of limitations for them is different than the statute of limitations for Jane Doe. Well, in their case, it probably is, because they were reporting it in February. That's all right, because we're only talking about two weeks. Right. But they're bound by the allegations in their complaint. They repeatedly say they reported sexual harassment in early 2017. But their history is a little different than Jane Doe's, isn't it? By a short period. But yes, they both ran before this case was filed. And they allege and plead in their allegations in their complaint that they were aware of it, that they reported it, and that they were unhappy with the investigation back in 2017. They're bound by that. And if it may, final comment, the United States Supreme Court, in defining actual notice, in the Gebser case, says constructive knowledge does not meet that standard. It is more than constructive. Gathering some general information and trying to construct a conclusion that maybe it's sexual. A year later, they said, a school is not liable for harassment between a teacher and student of which it should have known. Not liable. But only liable if it is deliberately indifferent to this sexual harassment which they have actual knowledge. Thank you, counsel. We understand your arguments. Thank you. Is there any time? We'll give you a minute so we even things out. Thank you. There was forcible sexual assault, forcible oral sex. There was repeated and continuing sexual misconduct by this perpetrator teacher that continued all the way through the summer after her graduation. And that is actionable. And this, for them to suggest that the district court analyzed this property. Isn't the only way to do it? The only thing that's actionable is what occurred while she was a student at Big Piney School? I do not believe so, Judge Murphy. And the reason is the grooming analysis by Dr. Shakespeare. Dr. Shakespeare's report was not considered hardly at all by the district court. And it describes how one cannot be aware and take action on a claim when you're still brainwashed and groomed. And the best cases are Swearingen and Forth. And the idea that they provided training, this is again something the district court did not consider. And we hope you remand it for trial. Thank you very much. Thank you for your helpful argument.